Lee **PERVIS**, By his next friend, Mrs. Elvin Pervis, et al., Plaintiffs,

v.

La**MARQUE** INDEPENDENT SCHOOL DISTRICT, its Board of Trustees, et al., Defendants.

Civ. A. No. 71–G–48.

United States District Court, S. D. Texas, Galveston Division.

June 4, 1971.

Nathaniel R. Jones, and James I. Meyerson, New York City, E. Brice Cunningham, Dallas, Tex., for plaintiffs.

Israel A. Lerner, La Marque, Tex., Stanley D. Baskin, Pasadena, Tex., for defendants.

Crawford Martin, Atty. Gen., of Tex., James C. McCoy, Asst. Atty. Gen., Austin, Tex., for intervenor.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Plaintiffs, Lee Pervis and Catherine McGrue, proceeding by their mothers as next friends, are former students at La Marque High School in La Marque, Texas. This is a secondary school discipline suit which they bring against La Marque Independent School District, its Board of Trustees, and various officials of the district as well as of the high school. Plaintiffs complain of alleged constitutional infirmities in the procedure whereby they were suspended from school for the remainder of the 1971 spring semester. They also question the constitutionality of the state statute which authorizes the suspension of incorrigible students from the public schools. Plaintiffs pray that this statute be declared invalid and its operation enjoined, that they be reinstated in school, and that their disciplinary records be purged of any reference to the

suspensions.[1] Asserting the interest of the State in preserving intact its Education Code, the Attorney General of Texas has intervened. Rule 24(b)(2), Fed.R.Civ.P.

The suit is pleaded as a class action. In view of the disposition of this case, it is unnecessary to decide whether the claim satisfies the requisites of Rule 23, Fed.R.Civ.P. The Court has jurisdiction over the named parties and the subject matter. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983. The case having been submitted on briefs, exhibits, and stipulated facts, it is now ripe for disposition.

## I.

▮ At the outset, plaintiffs pray that a three-judge district court be convened, pursuant to 28 U.S.C. § 2281, for the purpose of declaring unconstitutional on its face a state statute relating to the power of school boards to suspend incorrigible students. Tex.Educ.Code Ann. § 21.301 V.A.T.S. The three-judge court apparatus was designed to provide an extraordinary procedure for "a limited class of cases of special importance," Ex Parte Collins, 277 U.S. 565, 567, 48 S.Ct. 585, 586, 72 L.Ed. 990 (1928), and should be applied narrowly to comport with the spirit of its enactment. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); see Florida Lime and Avocado Growers v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960) (Frankfurter, J., dissenting).

▮ Such a court is appropriately convened only if the suit possesses the following four characteristics: (1) a state statute or administrative order of general statewide application must be assailed as unconstitutional, (2) a state officer must be a party defendant, (3) injunctive relief must be sought, and (4) the constitutional question raised must be substantial. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Hargrave v. McKinney, 413 F.2d 320 (5th Cir. 1969); 1A Moore's Federal Practice § 0.205; C. A. Wright, Law of Federal Courts, § 50 at 189 (2nd ed. 1970). In two of the foregoing indispensable respects, the instant case is wanting.

▮ First, there is no substantial constitutional question presented because the challenge to the statute is "obviously without merit". Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). A statute, usually criminal, may be assailed on grounds of vagueness when it either requires or forbids the doing of an act in terms so vague that ordinary men must guess at its meaning. Connally v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Section 21.301 of the Texas Education Code cannot be such a statute. By its terms, it is addressed to school boards of trustees and deals with the allocation of powers between the State and its school districts. The statute does not embody a prescriptive command to students, nor does it purport to establish or announce normative standards by which students might guide their behavior. As it neither requires nor forbids any act by plaintiffs, and as plaintiffs have not been punished for its violation, it is clearly not susceptible to constitutional attack for vagueness. Cf. Benson v. City of Minneapolis, 286 F. Supp. 614, 617 (D.Minn.1968); State v. Scott, 460 S.W.2d 103, 107 (Tex.1970).

▮ Neither can it be seriously contended that the suspension from school of incorrigible children represents

1. Plaintiff McGrue is presently attending school in California and has disavowed any intention of returning to La Marque High School, regardless of the outcome of this suit. Although this fact raises obvious problems of justiciability, the Court concludes that McGrue, by reason of her unfavorable status in the school's perma- nent disciplinary records, has sufficient interest in the litigation to preclude dismissal for want of standing. Cf. Carafas v. LaVallee, 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed. 554 (1968); Calbillo v. San Jacinto Junior College, 434 F.2d 609 (5th Cir. 1970) (per curiam).

an unconstitutionally overbroad conferral of power upon school boards of trustees. School districts, such as defendant, are quasi-municipal corporations which enjoy such powers as may be delegated to them by the State. Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931). Consistent with the diversity and flexibility crucial to effective governance of the schools, cf. Press v. Pasadena Independent School District, 326 F.Supp. 550 (S.D.Tex.1971), the delegation of power has necessarily been broad. The Legislature has devolved to district boards of trustees "the exclusive power to manage and govern the public free schools of the district", and has empowered the trustees to "adopt such rules, regulations and by-laws as they may deem proper." Tex.Educ.Code § 23.26(b) and (d). A more specific delegation is the one here attacked, Section 21.301:

> The board of trustees of any school district may suspend from the privileges of the schools any pupil found guilty of incorrigible conduct, but such suspension shall not extend beyond the current term of the school.

This statute is not ambiguous. To the extent that the term "incorrigible" requires textual elaboration, it may be read in pari materia with a companion statute relating to juvenile proceedings

> * * * against any child within the compulsory school attendance age who is * * * insubordinate, disorderly, vicious, or immoral in conduct, or who persistently violates the reasonable rules and regulations of the school which he attends, or who otherwise persistently misbehaves in such a manner as to render himself an incorrigible.

Section 21.302 Tex.Educ.Code; Schwartz v. Galveston Independent School District, 309 F.Supp. 1034, 1045 at fn. 10 (S.D.Tex.1970); Southern v. Board of Trustees For Dallas Independent School District, 318 F.Supp. 355, 359 (N.D.Tex. 1970); cf. Bishop v. Houston Independent School District, 119 Tex. 403, 29 S. W.2d 312 (Tex.1930).

■■ Thus fleshed out, the word "incorrigible" is clearly a general guideline employed in a non-criminal statute empowering a school's administrators to remove from the scholastic environment persons whose serious or persistent misbehavior threatens to impair the educational efficiency of the institution. It is a settled principle of common law origin that school board members, superintendents, and principals are officials impressed with the responsibility for front-line operation of the schools and stand, to some extent, in loco parentis. See Mercer v. State, 450 S.W.2d 715 (Tex.Civ.App.—Austin 1970, writ dism'd as moot), citing 1 W. Blackstone, Commentaries 453. As such, they "may exercise such powers of control, restraint, and correction over such pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education." Hailey v. Brooks, 191 S.W. 781, 783 (Tex.Civ.App.—Fort Worth 1916, no writ). As the District Court pointed out in Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97, 101 (S.D.Ga.1969), aff'd. 426 F.2d 1154: "By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport themselves."

Within the zone of reasonableness, an administrator must be given authority commensurate with his responsibility, or he cannot execute his assignment. At the level of the secondary school, the nature of the institution requires that such authority be tempered with considerable latitude and flexibility. It would be obviously inconsistent with this goal to require that the occasions for the exercise of a school board's disciplinary power be narrowly specified by the empowering statute in the manner of a criminal code. Legislative recognition of this fact is neither arbitrary

nor capricious. By drawing Section 21.301 in broad terms, the Texas Legislature has acted consistently with the realities of public education and with the requirements of the Federal Constitution. Perforce, the overbreadth contention is obviously without merit and is therefore insubstantial. Ex Parte Poresky, supra.

■ Plaintiffs lastly fault the statute because it fails to specify procedural steps to be taken by school boards in effecting suspensions and conducting hearings incident thereto. It has been held repeatedly in school discipline cases that an institution may adopt any procedural format consistent with simple fairness, and that this may vary "in the light of the parties, the subject matter and the circumstances involved." Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970). It clearly follows from this that a state legislature is not constitutionally required to enact a code of high school disciplinary procedure, and plaintiffs' contention to that effect is too insubstantial to support the jurisdiction of a three-judge court. Cf. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

■ Whether the school board has acted within the scope of the legitimate power conferred upon it by Section 21.301 is, of course, a question of state statutory interpretation. As it is not a federal question, it is constitutionally insubstantial beyond any doubt and does not present an issue for consideration by a three-judge court. Ex Parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353 (1929); Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968); Quarles v. Texas, 312 F.Supp. 835 (S.D.Tex.1970).

■ There is an additional reason that 28 U.S.C. § 2281 is inapplicable to this suit. With attention to the substance of the complaint rather than the form of the pleading, McGuire v. Sadler, 337 F.2d 902, 906 (5th Cir. 1964), it is readily apparent that plaintiff does not challenge a statute or order of general statewide application. Although the statute formally complained of applies to school districts across the State, it is part of a scheme of general enabling legislation empowering district school boards to act in the discharge of their responsibilities. Where, as here, the challenged action is that of a local body proceeding pursuant to a permissive state grant of power, the requirements of 28 U.S.C. § 2281 are not met. Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 227–228, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Madera v. Board of Education of City of New York, 267 F.Supp. 356, 360 (S.D.N.Y. 1967), rev'd on other grounds, 386 F.2d 778 (2nd Cir. 1967).

The real actions aggrieving plaintiffs —the suspensions—were taken by the school board in response to alleged repeated violations of policies which are effective only within the district; to wit, the rules of the La Marque High School.[2] To the extent that plaintiffs may raise a due process attack against a vague standard of conduct, the attack must be directed at the school rules as enforced by the board, rather than the statute from which the board derives its general powers. As the Supreme Court pointed out in Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940):

> It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional.

---

2. Such rules have been promulgated and are printed in the La Marque High School Student Handbook (1970–1971), which was distributed to all students at the beginning of the 1970–1971 school year. These rules are as specific as high school rules need be. See Press v. Pasadena Independent School District, 326 F.Supp. 550 (S.D.Tex.1971), cases collected at p. 564. Plaintiffs do not allege or contend that these rules are vague or overbroad.

The latter petition does not require a three-judge court. In such a case the attack is aimed at an allegedly erroneous administrative action. * * * Even where the statute is attacked as unconstitutional, [§ 2281] is inapplicable unless the action complained of is directly attributable to the statute.

 A constitutional attack which is in reality levied against disciplinary action for violation of school conduct rules will not support the convocation of a three-judge court, for it is aimed at neither a statute nor an administrative action of statewide application, and it is brought to enjoin local officers acting solely with reference to local matters. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939).

 For the foregoing reasons, this Court must decline to notify the Chief Judge of this Circuit for the purpose of convening a three-judge district court pursuant to 28 U.S.C. § 2284.

Parenthetically, even if a substantial constitutional question were presented and the requisites of a three-judge court were otherwise present, the subject matter of the instant case—secondary school discipline—might well require that such a court stay its hand. Insofar as plaintiffs urge that an important provision of the Texas school law be judicially amended, they invite the sort of intrusion into an area of primary state interest which has traditionally counselled restraint on the part of federal courts. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Press v. Pasadena Independent School District, supra. Similar considerations might dictate that the constitutional question be deferred or avoided by affording state courts a prior opportunity to measure the legality of local action against a state statute. See Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Hander v. San Jacinto Junior College, 325 F.Supp. 1019 (S.D.Tex.1971). Conceivably, both

the policy against intrusion in state administration and the policy against premature constitutional adjudication might together require abstention. Barrett v. Atlantic Richfield Co., 444 F.2d 38 (5th Cir., 1971). In short, it can be said that at least one member of the hypothetical three-judge panel would be moved by considerations such as those expressed by this Court in an earlier secondary school discipline opinion, Schwartz v. Galveston Independent School District, 309 F.Supp. at 1048–1050:

The manner in which students in public high schools should be educated is a subject for local determination. It is a subject foreign to the competence and expertise of the federal judiciary. * * *

State administrative and judicial review of issues affecting education is prompt, effective, and thorough. Almost all cases brought by students, though they be framed in constitutional terms, necessarily raise issues of state law, as to both educational policy and the power of local officials. * * *

In sum, I am convinced that students with claims against local school officials in Texas are not entitled to haul them into federal court to review their actions.

II.

The remainder of plaintiff's case rests on the assertion that the suspensions were effected in a manner violative of the Due Process Clause of the Federal Constitution. This contention need only be dealt with briefly.

Plaintiffs Pervis and McGrue were suspended from school on February 9 and 16, 1971, respectively. Both suspensions were initiated by the school principal and approved by the superintendent. Plaintiffs' parents were notified of this action at the time, and were informed of their right to an appearance before the Board. They did not elect to avail themselves of a board meeting. Instead, this suit was filed on April 22,

1971. The case was accelerated on the docket. A pretrial hearing was held on April 27, 1971. The Court at that time expressed to counsel its view that the case could not properly be advanced until recourse had been taken to the board, thus affording that body an opportunity to either vacate the suspensions or to render them final within the institution. Stevenson v. Board of Education, 426 F.2d 1154, 1157 (5th Cir. 1970), certiorari denied 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970).[3] The school board convened on the evening of May 4, 1971. The case proceeded to trial on May 17, 1971, twenty-six days after filing.

This board hearing lasted several hours and produced a transcript of some two hundred pages, which is now before the Court by stipulation. Although plaintiff McGrue was absent by choice, her mother was present and testified. Plaintiff Pervis was present and testified in his own behalf. Both the school district and plaintiffs were represented by counsel. Plaintiffs and the district were permitted to present witnesses and to cross-examine. In all, fifteen witnesses were heard.

■ A careful examination of the transcript reflects that this orderly hearing scrupulously protected the rights of the parties and was well calculated to reveal the truth. Indeed, in the aspect of procedural regularity, it somewhat resembled a judicial proceeding and considerably exceeded the minimal "rudimentary elements of fair play" prescribed by Dixon v. Alabama State Board of Education, 294 F.2d 150, 159 (5th Cir. 1963) cert. denied 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). Accordingly, the Court concludes that no federal rights were violated in the procedures followed by the board.

■ The evidence of misconduct by plaintiffs adduced before the board was plentiful and need not be reviewed in detail. The deportment records of plaintiffs Pervis and McGrue reflected fourteen and seven disciplinary infractions, respectively. Both histories of misbehavior culminated with serious breaches of propriety involving abrasive and disruptive encounters between plaintiffs and school officials. Cumulatively, the school officials were subjected to intemperate and vulgar language by plaintiffs. Having looked to the record as developed at the board hearing, this Court concludes that there was substantial evidence before the board to support its action. See Ferguson v. Thomas, supra, 430 F.2d at 858.

■ Finally, plaintiffs have asserted on oral argument that the delay of approximately twelve weeks between the suspensions and the May 4 board hearing was itself a denial of due process. It is sufficient to note that the plaintiffs did not request an earlier hearing, and must therefore bear responsibility for the delay. In any event, it is clear that the absence or deficiency of an initial hearing may be cured by a valid subsequent hearing, albeit after an interim of time. Cf. Opp Cotton Mills v. Administrator, 312 U.S. 126, 153, 61 S.Ct. 524, 85 L.Ed. 624 (1941). It is observed that the Court of Appeals for this Circuit, in recent school cases, has tacitly approved interims ranging from six months, French v. Bashful, 425 F.2d 182 (5th Cir. 1970), to two years, Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970).

Accordingly, judgment shall be entered for defendants. The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52, Fed.R. Civ.P. After approval as to form by opposing counsel, defendants shall submit a proposed form of judgment consistent herewith.

3. Cf. Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970); French v. Bashful, 425 F.2d 182 (5th Cir. 1970), certiorari denied 400 U.S. 941, 91 S.Ct. 232, 27 L.Ed.2d 244 (1970); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970).